# EXHIBIT

# "B"

DocuSign Envelope ID: DF9FD2B3-7AA2-473B-A219-16533CBB79C0

# ASSUMPTION AGREEMENT

**AGREEMENT**, effective this **1st day of February 2022**, by and Local 355, United Service Workers Union, IUJAT ("Union") and **SBT Insulation, LLC.**.("Employer").

**WHEREAS**, the parties hereto acknowledge that there is presently a Collective Bargaining Agreement between the Union and the Long Island and New York Mechanical Contractors' Association ("Association") dated for the period July 1, 2018 through June 30, 2022 . In addition, the Employer recognizes there are or will be certain amendments, extensions and renewals to the Association Agreement (hereinafter referred to as the "Association Collective Bargaining Agreement") to be negotiated on behalf of the Employer by the Association; and

**WHEREAS**, the Employer acknowledges receipt of the Association Collective Bargaining Agreement; and

**WHEREAS**, the Employer performs work from time to time which is covered by all or some of the above-mentioned Agreement and desires to avail its employees the terms and conditions of employment and benefits described in the Association Collective Bargaining Agreement when performing such work.

**NOW THEREFORE**, the parties agree as follows:

1.  The Employer is bound to all of the terms and conditions as are applicable from time to time by the nature of the work performed for the Association Collective Bargaining Agreement which is incorporated herein by reference as if fully set forth in this Agreement. The employees, unions, and employers covered by the Association Collective Bargaining Agreement, shall constitute one multi-employer bargaining unit.

2.  The Union having hereby requested recognition as the majority representative under the Act, the Employer hereby recognizes the Union as the majority Section 9(a) representative under the Act. The Employer also recognizes that the Union has the majority support of the unit employees to be the unit employees' exclusive collective bargaining representative and the Employer further recognizes the Union as the majority representative based on the Union having shown, or having offered to show, an evidentiary basis of its majority support.

3.  The parties further agree to be bound to all the agreements and declarations of trusts, amendments and regulations, thereto, referenced in the Association Collective Bargaining Agreement and to remit all contributions as set forth under the Association Collective Bargaining Agreement and all amendments, renewals and/or extensions thereto, as adopted by the aforesaid Association and the aforesaid Local Union or their designated trustees

4.  The Employer agrees to be responsible for the payment of fringe benefit contributions due and owing pursuant to the Association Collective Bargaining Agreement. All contributions are due in the fund office by the tenth of each month, unless specifically provided otherwise by the terms and conditions of a particular Fund. Further, the Employer agrees that for every employee performing unit work, fringe benefit contributions will be due and owing, regardless of whether they are also employed by the Employer during such period in some other capacity and/or hold a different title with said Employer's company, including but not limited to owner, shareholder, officer, director, etc.

5.  The Employer agrees that the Association shall, on behalf of the Employer, negotiate successor Collective Bargaining Agreements, amendments, renewals and extensions of the Collective Bargaining Agreement and the Employer agrees to be bound by any and all amendments, renewals and/or extensions of the above referenced Association Collective Bargaining Agreement unless and until the Association's authority therefore is rescinded by notice from the

DocuSign Envelope ID: DF9FD2B3-7AA2-473B-A219-16533CBB79C0

the Employer to the Association and copied to the Union in writing by USPS certified mail at least ninety (90) but not more one hundred twenty (120) days prior to the renewal and/or Termination Provisions of the Association Collective Bargaining Agreement and this Agreement is properly terminated by either the Employer or the Union in accordance with the renewal and/or Termination Provisions of the Association Collective Bargaining Agreement.

**IN WITNESS WHEREOF**, the parties have caused this agreement to be executed by their duly authorized representatives.

Union Official – Business Agent

Association –

|  | SBT Insulation, LLC. |
|  | Company Name |
|  |  |
|  | 60 Rocky Hill Road |
|  | Address |
|  |  |
|  | New Paltz, NY 12561 |
|  | City, State, Zip Code |
|  |  |
|  | 845-750-1305 |
|  | Telephone Number |
|  |  |
|  | Fax Number |

Signature of Officer

Name and Title of Officers(s)
(PLEASE PRINT)

Signature of Officer(s)

Kevin Terkelson, Principal

Name and Title of Officer(s)
(PLEASE PRINT)

# AGREEMENT

# BETWEEN

# UNITED SERVICE WORKERS UNION, IUJAT, LOCAL 355
### (the "Union")

# AND

# LONG ISLAND AND NEW YORK MECHANICAL CONTRACTORS' ASSOCIATION



## JULY 1, 2022 THROUGH JUNE 30, 2025



# AGREEMENT BETWEEN

# UNITED SERVICE WORKERS UNION, IUJAT, LOCAL 355
## (the "Union") AND

# LONG ISLAND AND NEW YORK MECHANICAL  CONTRACTORS' ASSOCIATION

## JULY 1, 2022 THROUGH JUNE 30, 2025

# TABLE OF CONTENTS

**Article**                                                                    **Page**

ARTICLE 1. RECOGNITION & BARGAINING UNIT                  2

ARTICLE 2. UNION SECURITY                                            2

ARTICLE 3. CHECK-OFF AUTHORIZATION                          3

ARTICLE 4. VISITATION                                                   4

ARTICLE 5. UNION STEWARDS                                         4

ARTICLE 6. REAL PARTY IN INTEREST                              4

ARTICLE 7. RIGHT TO HIRE AND FIRE                              5

ARTICLE 8. ADJUSTMENT OF DISPUTES                          5

ARTICLE 9. SENIORITY                                                    8

ARTICLE 10. WAIVER OR MODIFICATION                         8

ARTICLE 11. NO STRIKE                                                  9

ARTICLE 12. WORK PRESERVATION                               9

ARTICLE 13. LABOR MANAGEMENT CORPORATION          10

ARTICLE 14. UNITED WELFARE FUND                            10

ARTICLE 15. HEALTH CARE CONTINUATION BENEFITS / FMLA    13

ARTICLE 16. UNITED WELFARE FUND – SECURITY DIVISION    14

ARTICLE 17. APPRENTICE FUND                                   15

ARTICLE 18. STANDARD APPRENTICESHIP LANGUAGE      16

ARTICLE 19. REGULAR WORK WEEK AND WORK DAY         20

ARTICLE 20. HOLIDAYS                                    21

ARTICLE 21. VACATIONS                                  22

ARTICLE 22. NO DISCRIMINATION                          24

ARTICLE 23. SICK LEAVE                                 24

ARTICLE 24. BEREAVEMENT LEAVE                          25

ARTICLE 25. JURY DUTY                                  26

ARTICLE 26. LEAVE OF ABSENCE                           26

ARTICLE 27. WAGE RATES                                 26

ARTICLE 28. COPE                                       28

ARTICLE 29. NO REDUCTION OF BENEFITS                   28

ARTICLE 30. PREVAILING WAGES                           29

ARTICLE 31. ON CALL                                    29

ARTICLE 32. TRAVEL PAY                                 29

ARTICLE 33. BREAK IN SERVICE                           30

ARTICLE 34. SAVINGS CLAUSE                             30

ARTICLE 35. ASSOCIATION MEMBERSHIP                     30

ARTICLE 36. TOOLS                                      31

ARTICLE 37 – IUJAT 401K                                34

ARTICLE 38.  DURATION AND TERMINATION                  37

AGREEMENT, made this **1st day of July, 2022** by and between **UNITED SERVICE WORKERS UNION, IUJAT, LOCAL 355,** hereinafter referred as the "Union" having its principal office at 145 Huguenot Street, Suite 420, New Rochelle, NY 10801 and the **LONG ISLAND AND NEW YORK MECHANICAL CONTRACTORS' ASSOCIATION, INC.**

having an office at P.O. Box 1359, Central Islip, NY 11722, hereinafter referred to as the "Association" for and on behalf of those present and future members of the Association who individually authorized the Association to act as their bargaining agent, each of which is referred to as an ' Employer."

Whereas, the Union has been designated by a majority of the employees of the Employer in the bargaining unit as their sole collective bargaining agent with respect to wages, hours and other conditions of employment; and

Whereas, it is recognized that the efficient and orderly method of establishing and maintaining peaceful and harmonious labor relations and of dealing with problems and controversies arising out of employment is through negotiations and agreement, rather than through strikes and lockouts;

Whereas, in order to advance the desired stability of peaceful and harmonious labor relations, uniform terms and conditions of employment in the industry and the full benefits of multi-employer bargaining, the parties agree the employees of the member Employers shall constitute a multi-employer bargaining unit; and

Now, therefore, in consideration of the mutual promises herein contained, the parties agree as follows:

## ARTICLE 1.  RECOGNITION & BARGAINING UNIT

The Employer recognizes the Union as the sole and exclusive bargaining agent for all **JOURNEYMAN, TECHNICIANS, APPRENTICES AND HELPERS**, excluding all other employees, guards and supervisors. The Employer unconditionally acknowledges and confirms the Union is the exclusive bargaining representative of its employees covered under this Agreement pursuant to Section 9(a) of the National Labor Relations Act and that such recognition was granted after the Union requested such recognition as the majority representative and that such request was based on its having shown, or offered to show evidentiary basis of such support. In the event any dispute arises as to whether or not an employee does in fact, come within one of the included or excluded categories above mentioned, such dispute shall be determined in accordance with the arbitration procedures of this Agreement.

## ARTICLE 2.  UNION SECURITY

a)    All present employees who are members of the Union on the execution or effective date of this Agreement, whichever, is later, shall remain members of the Union at least to the extent of paying Union dues and initiation fees uniformly required as a condition of acquiring or retaining membership.  All present employees who are not members of the Union and all employees hired hereafter, shall become and remain members of the Union at least to the extent of paying such Union dues and initiation fees on and after the first day of the month after the 31st day following the beginning of their employment, or after the 31st day following the execution or effective date of this Agreement, whichever is later.

b)    In the event an employee covered by this Agreement is declared by the Union not to be in good standing, the Union shall notify the Employer and Employee in writing of such fact, and the parties shall have ten (10) business

days' time to adjust the matter. Should the matter not be adjusted within the allotted time, then the employee in question shall be discharged from the employ of the Employer.  For the purpose of this section,  "good standing" shall mean the payment of uniform dues and initiation fees required to obtain or maintain membership in the Union.

c)    The chief shop steward shall be notified by the Employer when a new employee is hired.

## ARTICLE 3.  CHECK-OFF AUTHORIZATION

a)    The Employer shall deduct from each employee an amount equal to the initiation fees and membership dues uniformly required as conditions of acquiring and retaining membership in the Union, provided that the employee has duly signed, dated and delivered to the Employer, the written authorization form for such deductions set forth below in this Section 1 (a). The Employer will notify the Union of any revocation of an authorization by an employee.

> "I hereby authorize and direct my Employer, which is a signatory to the contract between United Service Workers Union, IUJAT Local 355 and the Long Island and New York Mechanical Contractors' Association, to deduct from my wages and to pay over to **United Service Workers Union, IUJAT, Local 355,** such amounts, including Dues and Initiation Fees (as Membership Dues) in said Union, as may be established by the Union and become due to it from me during the effective period of this authorization.
>
> This authorization may be revoked by me as of any anniversary date hereof, or termination date of the

3

Collective Bargaining Agreement, whichever occurs sooner, by written notice signed by me. This authorization shall automatically renew itself unless written revocation is submitted."

b)     Nothing contained in this Article shall be construed so as to require the Employer to violate any applicable law.

c)     This dues checkoff provision shall remain in effect after the expiration of the collective bargaining agreement until a successor agreement is negotiated.

## ARTICLE 4.  VISITATION

An official representative of the Union shall be permitted reasonable time to visit the Employer's premises during working hours.  Each representative shall first report to the office of the Employer and he shall not interfere with the work of any employee and shall, at all times, comply with shop rules.

## ARTICLE 5.  UNION STEWARDS

a)     The Union shall designate not more than one (1) employee as chief shop steward for the Employer.  The chief shop steward shall have top seniority in the shop of the Employer for layoff purposes, provided, however, that he is able to perform the functions of the position  for which he seeks to claim his seniority.

b)     The shop steward shall suffer no loss of pay for time spent by him during regular working hours in the handling of grievance procedures.

## ARTICLE 6.  REAL PARTY IN INTEREST

It is agreed that this Agreement shall not vest or create in any employee or group of employees covered thereby, any rights or remedies which they or any

4

of them can enforce either at law, equity or otherwise, and whether as principal of third party beneficiary or otherwise, it being understood and agreed on the contrary, that all of the rights and privileges created or implied from this Agreement shall be enforceable only by the parties hereto and only in the manner established by this Agreement.

## ARTICLE 7.  RIGHT TO HIRE AND FIRE

a)     The Employer shall have the right to hire, without regard to Union membership or lack of Union membership, such employees as it deems necessary for efficient operation of its facility.

b)     All new employees covered by this Agreement shall be hired upon a trial basis, and the Employer shall have the absolute right to discharge any employees thus hired at any time within the first year of their employment.

c)     The Employer shall have the right to discharge any employee covered by this Agreement for any good cause. The Employee shall have the right to challenge such discharge by notifying the Union within five (5) days thereof. In the event that the Union challenges such discharge, the same shall be adjusted as a grievance as hereinafter provided in this Agreement. Pending final disposition of said grievance, the employee need not be retained on the job by the Employer but, in the event that the employee is not retained on the job by the Employer, the arbitrator shall have the right, in his discretion if he so determines, to order the reinstatement of such employee with or without back pay.

d)     New Hires will be classified by the Employer at hiring. The Employer reserves the right to reclassify an employee within the first one hundred twenty (120) days of employment.

## ARTICLE 8.  ADJUSTMENT OF DISPUTES

All   disputes,   complaints,   controversies,   claims   and   grievances arising   between   the   Employer   and   the   Union,   or   any   group   of   employees

covered by this Agreement with respect to, concerning or growing out of the interpretation, operation, application, performance or claimed breach of any of the terms and conditions of this Agreement shall be adjusted in accordance with the following procedure:

a)    Any said dispute or grievance (other than a discharge pursuant to Article 7(c)), shall be presented by the affected Employee to the Employer or the Union, as the case may be, within ten (10) calendar days of its occurrence. Upon the failure of the affected employee to timely present said dispute or grievance, the dispute or matter grieved shall be deemed settled and resolved without further remedy. The ten (10) day time limitation set forth herein does not apply to claims that employees have been paid the incorrect contractual wage rate.

If the dispute or grievance, having been timely presented by the Employee, is not adjudicated or resolved within five (5) calendar days after being presented (as described above), the matter shall be taken up between a representative of the Union and the Employer after the Union becomes aware such dispute has arisen. If the said dispute shall not be adjusted within fifteen (15) working days thereafter, then the grievance shall be reduced to writing by the aggrieved party and the matter may be submitted to arbitration upon forty-eight (48) hours written notice by either party to the other.

b)    The parties designate J.J. Pierson, Elliott Shriftman and Randi E. Lowitt as permanent arbitrators to alternately hear and decide every other grievance, beginning with Arbitrator Pierson. The decision of the arbitrator shall be final and binding upon the parties and shall be fully enforceable in law, or in equity and the parties expressly consent that an award may be enforced in the Supreme Court of New York, County of Queens or in any court with jurisdiction over the parties. It is expressly understood and agreed, however, that the arbitrator shall not have the power to amend, modify, or alter, or in any way, add to or subtract from this Agreement or any provision thereof. The cost of

arbitration shall be shared equally by the Employer and the Union. The arbitration shall be brought against the Employer with the Association acting as its Agent. The Association is authorized to accept service on behalf of the Employer.

c)    Any dispute concerning the payment of fringe benefits contributions and union dues remittances required under this contract may be also submitted by the relevant Fund and/or the Union to Aaron Shriftman in accordance with the collections policy of said Fund(s). In such a case the arbitrator is empowered and authorized to award such remedies as may be provided in the collections policy of such Fund and those provide pursuant to Sections 502(g)(2) and 515 of the Employee Retirement Income Security Act of 1974, as amended, to enforce the Employer's obligation to make contributions. With respect to any employer that is the subject of two or more arbitration hearings wherein it is found by the arbitrator to have been delinquent in making benefit fund contributions to any fringe benefit fund(s) in this contract, in the second or any subsequent arbitration, the Fund(s) or Union may request the arbitrator to direct such Employer to post a cash security deposit, bond, irrevocable letter of credit or other security acceptable to the Fund(s), to the joint benefit of the Trustees of the affected Funds, jointly and severally, of any and all amounts due from said Employer to each or all of the Funds pursuant to this contract. The amount of such security so required shall be equal to at least the average of the contributions due from such Employer for three (3) months before the delinquency that gave rise to the application of this requirement.

Where the Union or Fund(s) have secured a judgement in a court of competent jurisdiction against an Employer for delinquent contributions due under this contract and such Employer fails to satisfy such judgement or enter into and honor a payment plan acceptable to the Trustees of the affected Fund(s) for the satisfaction of such judgement within thirty (30) days of receiving notice, by certified mail addressed to the last address of the employer on file with the

Fund(s), of the entry of such judgement, the Union may refuse to permit employees to work for such Employer without thereby violating Article 11 of this contract.

### ARTICLE 9.  SENIORITY

a)     The Employer shall have the right to lay off employees covered by this Agreement according to the needs and requirements for the successful, efficient operation of the business. The layoff shall be governed by the rules of seniority, but the rule of seniority shall not be based on seniority only. The layoff shall be effective on the basis of seniority within classification and according to the requirements of the operation and with due consideration being given to whether the employee has the knowledge and ability to perform the particular work involved.

b)     All present employees covered by this Agreement shall be entitled to seniority rights. All new employees covered by this Agreement, who have completed one year of employment, shall be entitled to seniority retroactive to their date of hire.

Subject to section (a) herein, all layoffs shall be in inverse order of seniority; that is, the last person hired shall be the first person laid off. In the event that additional employees shall be needed, all persons covered by this Agreement previously laid off within a period of six (6) months prior thereto, shall be rehired in the order of seniority; that is, the last person laid off, shall be the first person to be rehired; provided, however, that any employee so recalled, must report for work within three (3) days after the sending of notification, by mail or telegram, addressed to the employee at his last known address, by the Employer, or failing to do so, shall  forfeit his right in the Employer's employ.

### ARTICLE 10.  WAIVER OR MODIFICATION

Neither the Employer, nor any employee, or group of employees, shall have the right to waive or modify any provision of this Agreement, without the

written authorization of the Union.

### ARTICLE 11.  NO STRIKE

During the life of this Agreement, there shall be no strike, stoppage of work, slowdown, picketing, boycotting, lockout, or any other economic pressure or activity of any kind by either party against the other for any reason or matter, controversy or grievance, or claim of breach of contract of any kind, nature or description, between the parties hereto.

### ARTICLE 12. WORK PRESERVATION

In order to protect and preserve the work falling within the scope of this agreement that is to be done at the site of construction, alteration, maintenance, or repair of any building, structure or other works for the employees covered hereby, the parties agree, provided there are at least four (4) Employers signatory to a contract with the Union engaged in the kind of work such Employer desires to contract or subcontract (including, but not limited to pipefitting, steamfitting, plumbing, fire sprinkler, sheet metal, or mechanical service), if the Employer should contract or subcontract any of the work performed by Employees covered by this Agreement at such site(s), it may do so only to a firm(s) that is signatory to or agrees to become signatory to a collective bargaining agreement with the Union and observes the standards of hours, wages, fringe benefits and other terms and conditions of employment provided herein. It  is understood and agreed, the provisions of this work preservation Article shall not apply if a signatory Employer secures work in accordance with a bonafide Project Labor Agreement (PLA) or other contract that requires work to be assigned to workers not covered by this Agreement.  It is understood and agreed, the provisions of this work preservation Article shall not apply if a signatory Employer secures work in accordance with a bonafide Project Labor Agreement (PLA) or other contract that requires work to be assigned to individuals represented by another labor organization as that term is defined by the Act.

9

**ARTICLE 13. LABOR MANAGEMENT CORPORATION**

The parties to this Agreement continue to recognize the United Service Workers Labor Management Corporation. The Corporation shall exist for the parties to advance their common lawful purposes under the Labor Management Cooperation Act of 1978, as amended from time to time, and shall be operated by a board of directors, an equal number of which shall be appointed by the Union and the Association as parties to this Agreement. The Corporation shall be funded effective July 1, 2022, by employer contributions of $.40 per hour for each hour worked by each employee covered by this Agreement, commencing on the first day of the month following completion of six (6) months of employment.

**ARTICLE 14.  UNITED WELFARE FUND**

The Employer shall contribute monthly, to be in the hands of the Fund Administrator on or before the tenth (10th) calendar day of the current month, to the United Welfare Fund, the following amounts per month for each employee covered by this Agreement who is on the payroll on the first day of that month. Employees will be covered pursuant to the Union's welfare in accordance with the following schedule: Subject to the applicability of the Affordable Care Act, ("Act"), for employees hired on or after July 1, 2016: (i) the Employer will pay for the cost of single coverage to be effective on the first day of the month after sixty (60) days of employment; (ii) Unit Employees will be offered the opportunity to select health benefits, at their own expense, for their children up to the age of twenty-six (26), in accordance with the Act; and (iii) the Employer will pay for the cost of family coverage to be effective not later than the first day of the month in which the employee will attain six (6) months of employment, or, at the employer's discretion, such payment may also be provided at the same time single coverage payment is available to the employee.

UWF – Health Plan

| Date | Single Rate | Parent/Children | Husband/Wife | Family Rate |
|---|---|---|---|---|
| June 30, 2023 | $722.00 | $1083.00 | $1444.00 | $2140.00 |
| June 30, 2024 | | | | |
| June 30, 2025 | | | | |

**\* Rates are good until June 30th of each year of the contract\***

      **\*Employees can waive medical insurance. Employees who waive medical insurance will receive one-hundred ($100.00) dollars per month, but employees must show proof of alternative insurance.**

| **COVERAGE** | **SINGLE** | **FAMILY RATE** |
|---|---|---|
| LifeInsurance 12,000 | $  9.00 | $  9.00 |
| UWF Dental | $ 42.00 | $ 84.00 |

These amounts shall be used by said Welfare Fund for the purpose of financing the Welfare Plan for the benefit of said employees and to provide such benefits under the plan as the trustees, in their sole discretion, determined appropriate. In the event that the Trustees of said Welfare Fund shall determine that the amounts contributed by Employers are insufficient to adequately provide for the benefits made available to employees, the Employer agrees to make payment in such increased amounts as shall be determined by said Trustees.

Effective July 1, 2022, July 1, 2023, July 1, 2024, any increase in the

cost of medical insurance shall be borne by the Employer and the Employees in accordance with the formula set forth below, but in no case shall an employee be required to contribute more than their annual wage increase toward increased medical costs. Subject to this maximum increase: Journeyman A employees shall contribute 50% of any increased cost of medical insurance, Journeyman B employees shall contribute 40% of any increase cost of medical insurance, Journeyman C employees shall contribute 30% of any increased cost of medical insurance, Journeyman D employees shall contribute 20% of any increased cost of medical insurance, Helper II employees shall contribute 15% of any increased cost of medical insurance, Helper I employees shall contribute 10% of any increased cost of medical insurance.

a)    Benefits provided by United Welfare Fund for employees covered by this agreement shall terminate the date that any contribution required on the part of the Employer is due and unpaid, or the first date of the month following the date said Welfare Fund notifies the Employer that coverage will no longer be offered for its employees, or the first date of the month following the date an employee ceases to be employed by the Employer. Termination of employment and ceases to be employed shall be defined as cessation of active work by termination, layoff, work stoppage, leave of absence, resignation, quitting, dismissal, being pensioned or retired, or cessation of active work because of disability. The Employer will notify the Welfare Fund of any employee who has taken leave under the "FMLA" and will continue to contribute for such employee on FMLA leave.

b)    Said Welfare Fund shall at all times comply with all laws and regulations governing such Fund, and the Employer shall have all of the rights of contributing employers provided by law and the Declaration of Trust relating to said Welfare Plan. Trustees of said Fund shall have the right to provide for inclusion in the Plan of Union officers, agents and employees, and such other persons as they may determine shall be included.

c)    The employer agrees that the Trust Agreement establishing the United Welfare Fund shall be deemed to be as though fully set forth herein and the terms thereof shall bind the employer as if it were a signatory to the agreement of trust made and establishing the United Welfare Fund and ratify and confirm the makeup of the Board of Trustees and the Rules and Regulations adopted by the trustees from time to time.

d)    If the Employer is ten or more days delinquent in its obligation to make contributions under this Article, the Union may serve a notice of delinquency upon the Employer via certified mail or overnight mail stating that all coverage and benefits for the employer's employees under the United Welfare Fund will be suspended unless the delinquency is cured within ten (10) days of the date of notice. If the delinquency is not cured within the time set forth in the notice, the United Welfare Fund may suspend benefits and coverage for the employer's employees. In the case of a benefit suspension, the Employer is fully liable for equivalent coverage for all of its employees and in the event of any loss sustained by the employee or his dependents because of the suspension of benefits and coverage, the Employer shall directly and fully compensate the employee for any loss. The rights granted under this section are cumulative and do not relieve the Employer of its obligation to make contributions or waive any other rights of the Union or United Welfare Fund which may exist.

**ARTICLE 15. HEALTH CARE CONTINUATION BENEFITS / FMLA**

a)    In addition to any benefits any employee may be statutorily entitled to pursuant to the federal Family & Medical Leave Act ("FMLA"), provided that an employee has *also* worked for a covered employer for one (1) year *and* one thousand two hundred fifty (1,250) hours in the year immediately prior to the employee's request for leave, the employee shall be entitled to continuation health benefits as described herein.

b)    Seniority shall continue to accrue during an employee's leave

13

pursuant to the FMLA.

c)     For employees covered under the FMLA or who have worked the length of time and hours described in paragraph (a) of this Article, contributions and payments for health coverage shall continue to be paid during the period of all leaves provided for in this agreement which do not exceed three (3) months, commencing with the first day of the month after the month in which the employee began the leave.

## ARTICLE 16. UNITED WELFARE FUND – SECURITY DIVISION

a)     The Employer shall contribute monthly, the following amounts per month for each eligible employee covered by this Agreement who is on the payroll on the first day of each month. Employees will be eligible pursuant to the Security Division in accordance with the following schedule: Employees hired on or after July 1, 2022 shall become eligible for benefits provided through the United Welfare Fund – Security Division upon completing six (6) months of employment. Benefits shall commence and the employer's contribution obligation shall commence on the first day of the month following completion of six months of employment.

**Six (6) Months to Two (2) Years: $0.25 per hour** for every hour paid, including sick time, holidays and vacations.

**After Two (2) Years to Five (5) Years: $1.00 per hour** for every hour paid, including sick time, holidays and vacations.

**After Five (5) Years: $3.75 per hour** for every hour paid, including sick time, holidays and vacations.

**After Nine (9) Years: $5.50 per hour** for every hour paid, including sick time, holidays and vacations.

**After Fourteen (14) Years: $5.75 per hour** for every hour paid, including sick time, holidays and vacations.

For new employees, it is understood that contributions shall be made on

the first day of the month following six (6) months of employment.

The Employer agrees to contribute the above amounts per month to the United Welfare Fund - Security Division, to be in the hands of the Fund Administrator on or before the first (1st) day of the current month, for each employee covered by this Agreement, together with an additional sum of ten (10%) percent of each member's monthly Security Division contribution. This additional amount shall not exceed $20.00 per member per month. Said fee is to be utilized in connection with administrative expenses of said Security Division.

d)     The Security Division is a part of United Welfare Fund, which has been established by an Agreement and Declaration of Trust between the Union and Employers under contract with the Union and is administered by an equal number of Trustees designated by the Union and Employers, respectively.

e)     The employer agrees that the Trust Agreement establishing the United Welfare Fund shall be deemed to be as though fully set forth herein and the terms thereof shall bind the employer as if it were a signatory to the agreement of trust made and establishing the United Welfare Fund and ratify and confirm the makeup of the Board of Trustees and the Rules and Regulations adopted by the trustees from time to time.

f)     These amounts shall be used by said Security Division for the purpose of financing the Security Division for the benefit of said employees. In the event that the Trustees of said Security Division shall determine that the administrative fees contributed by Employers are insufficient to adequately provide for the administration of the Fund, the Employer agrees to make payment in such increased amounts as shall be determined by said Trustees.

**ARTICLE 17. APPRENTICE FUND**

a)     Commencing on the first day of the month after the thirty-first (31st ) day of employment for each employee, for each hour worked by each

employee, the Employer shall make contributions in the amount of $1.32 per hour for every hour worked by each employee covered by this Agreement to the Local 355, United Service Workers, IUJAT, Joint Apprenticeship and Training Fund ("Apprenticeship Fund").

      b)    The Employer contributions shall be used exclusively to provide programs through a plan qualified by the Internal Revenue Service in such form and amounts the Trustees of the Fund may determine, as well as for the organization and administration expenses of the Fund.

      c)    The employer agrees that the Trust Agreement establishing the Local 355, United Service Workers Union, IUJAT Joint Apprenticeship and Training Fund shall be deemed to be as fully set forth herein and the terms thereof shall bind the employer as if it were a signatory to the agreement of trust made and establishing the United Welfare Fund and ratify and confirm the makeup of the Board of Trustees and the Rules and Regulations and collections policy adopted by the trustees from time to time. The employer ratifies and confirms the makeup of the Board of Trustees of said Fund.

**ARTICLE 18. STANDARD APPRENTICESHIP LANGUAGE**

      a)    There shall be a Joint Apprenticeship and Training Fund (JATF) consisting of a total of either six members who shall also serve as Trustees to the apprenticeship fund. An equal number of three members each shall be appointed, in writing, by the Long Island & New York Mechanical Contractors' Association and the local union of the United Service Workers Union (USWU) acting through its National Executive Board.

      b)    The JATF shall be responsible for the training of apprentices, journeymen and other appropriate persons related to the construction industry.

      c)    All JATF member appointments, reappointments and acceptance of appointments shall be in writing. Each member shall be appointed for a three-year term unless being appointed for a lesser period of time to complete and

unexpired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATF members shall complete their appointed term unless removed by the party they represent or they voluntarily resign. All vacancies shall be filled immediately by the designating party for such vacant position.

        d)    The JATF shall select from its membership, but not both from either the management or labor side, a Chairman and a Secretary who shall retain voting privileges. The JATF will maintain one (1) set of minutes for JATF committee meetings and a separate set of minutes for Trust meetings.

        e)    The JATF should meet on a bi-monthly basis, and also upon the call of the Chairman.

        f)    Any issue concerning an apprentice or an apprenticeship matter shall be referred to the JATF for its review, evaluation and resolution as per standards and policies. If the JATF deadlocks on any issue, the matter shall be referred to arbitration for resolution as provided for this agreement.

        g)    There shall be only one (1) JATF and one (1) apprenticeship and training trust. The JATF may, however, establish joint sub-committees to meet specific needs.

        h)    All sub-committee members shall be appointed, in writing, by the party they represent. A sub-committee member may or may not be a member of the JATF.

        i)    The JATF may select and employ a part-time or a full-time Director and other support staff, as it deems necessary. In considering the qualifications, duties and responsibility of the Training Director, the JATF should review the Training Director's Job Description. All employees of the JATF shall serve at the pleasure and discretion of the JATF.

        j)    To help ensure diversity of training, provide reasonable continuous

17

employment opportunities and comply with apprenticeship rules and regulations, the JATF, as the program sponsors, shall have full authority for issuing all job - training assignments and for transferring apprentices from one Employer to another. The Employer shall cooperate in providing apprentices with needed work experiences. If the Employer is unable to provide reasonable continuous employment for apprentices, the JATF is to be so notified.

     k)    All apprentices shall enter the program through the JATF as provided in the registered apprenticeship standards and selection procedures. An apprentice may have their indenture canceled by the JATF at any time prior to completion as stipulated in the registered standards. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

     l)    The JATF shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATF is authorized to indenture a total number of apprentices not to exceed a ratio of one apprentice to three (3) Mechanics normally employed in the jurisdiction, unless they are authorized and instructed to increase the number by the parties to the USW and the Long Island & New York Mechanical Contractors' Association collective bargaining agreement. The JATF shall indenture a larger number of apprentices provided the individuals are entering the program as the result of direct entry through organizing; as provided for in the registered apprenticeship standards.

     m)    Though the JATF cannot guarantee any number of apprentices; if a qualified employer requests an apprentice, the JATF shall make reasonable efforts to honor the request within ten (10) working days, and the JATF has less

than a one (1) to three (3) ratio indentured; they shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATF as per the selection procedures.

n)    To accommodate short-term needs when apprentices are unavailable, the JATF shall assign unindentured workers who meet the basic qualifications for apprenticeship. Unindentured workers shall not remain employed if apprentices become available for OJT assignment.

i.    Unindentured workers shall be used to meet job site ratios except on wage-and -hour (prevailing wage) job sites.

ii.    Before being employed, the unindentured person must sign a letter of understanding with the JATF and the employer agreeing that they are not to accumulate more than two thousand (2000) hours as an unindentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-an-hour (prevailing wage) job sites.

iii.    Should an unindentured worker be selected for apprenticeship, the JATF will determine, as provided for in the apprenticeship standards, if some credit for hours worked, as an unindentured will be applied toward the minimum OJT hours of apprenticeship.

iv.    The JATF may elect to offer voluntary related training to unindentured; such as Math review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

o)    An apprentice is to be under the supervision of a Mechanic at all

times. This does not imply that the apprentice must always be in sight of a Mechanic. Mechanics are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated Supervisor or Mechanic based on their evaluation of the apprentices skills and ability to perform job tasks in order to develop job skills and trade competencies. Mechanics are permitted to leave the immediate work area without being accompanied by the apprentice.

     i.    An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

p)    Upon satisfactory completion of apprenticeship, the JATF shall issue all graduating apprentices an appropriate diploma from the JATF.

q)    The parties to this agreement shall be bound by the Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor Management Relations Act of 1947 as amended, ERISA and other applicable regulations.

     i.    The trustees authorized under this trust agreement are hereby empowered to determine the reasonable value of any facilities, materials or services furnished by either party. All funds shall be handled and disbursed in accordance with the trust agreement.

## ARTICLE 19.  REGULAR WORK WEEK AND WORK DAY

a)    The normal work week of the employees covered by this Agreement shall be five (5) days per week (Monday through Friday), eight (8) hours per day, forty (40) hours per week.

b)    Should any employee work more than eight (8) hours in any one

(1) day or forty (40) hours in one calendar week (Monday – Sunday) he shall be paid overtime at the rate of time and one half (1 ½ times) his regular hourly rate of pay.

     c)    All work performed on Sunday shall be paid for at the rate of time and one  half (1 ½ times) his regular hourly rate of pay).

     d)    All work performed on Saturday shall be paid at the employee's regular hourly rate of pay unless such work is in excess of forty (40) hours for the calendar week (Monday through Sunday).  If such work is in excess of forty (40) hours in one calendar week (Monday through Sunday), he shall be paid overtime at the rate of time and one-half (1 ½ times) his  regular hourly rate of pay.

     e)    The workweek can be changed to four (4) days a week with ten (10) hours a day. Overtime after ten (10) hours in a day. This will be done on a job by job basis.

     f)    If an arrangement has been agreed upon with the Employer, any said employee who works a night shift in lieu of daytime hours will receive the following:  work performed between 4pm and 8am will receive a 10% differential.

**ARTICLE 20.  HOLIDAYS**

     a)    The following holidays shall be granted to all employees covered by this Agreement, irrespective of the day of the week on which such holiday occurs:

| | |
|---|---|
| New Year's Day | Labor Day |
| Presidents Day | Veterans Day |
| Memorial Day | Thanksgiving Day |
| Independence Day | Day After Thanksgiving |
| | Christmas Day |

b)    In the event that any employee is called to work on any of the above-mentioned holidays, he shall receive, in addition to a full day's pay, pay at time and one-half (1 1/2 times) for all work performed on that day.

c)    In the event that one of the above mentioned holidays falls on a Saturday, the employee shall be granted a paid day off on the Friday preceding the actual holiday.  In the event that one of the above mentioned holidays falls on a Sunday, the employee shall be granted a paid day off on the Monday following the actual holiday.

d)    The employee must work his regularly scheduled shift the day before and the day after the holiday to receive the above-mentioned holiday pay, unless authorized by the Employer. If the absence is unauthorized, the employee must have a note from their health care provider to be paid for the holiday.

## ARTICLE 21.  VACATIONS

a)    All employees covered by this Agreement shall be eligible for paid vacations according to the following schedule with the length of an employee's continuous service being calculated from the anniversary date of hire:

**Six (6) Months to One (1) Year - One (1) Week**
(accrued one (1) day per month months 7 through 11)

**After One (1) Year – One (1) Week**
(accrued 0.416 day per month)

**After Two (2) Years – Two (2) Weeks**
(accrued 0.833 day per month)

**After Five (5) Years – Three (3) Weeks**
(accrued 1.25 days per month)

**After Fifteen (15) Years – Four (4) Weeks**
(accrued 1.67 days per month)

*Accrual rates referenced above is for layoff and termination purposes only.

After a unit employee has been employed by an Employer signatory to a Collective Bargaining Agreement with the Union for more than one (1) year, the employee may take the vacation described above. Notwithstanding the fact that the unit employee may be entitled to a specific amount of vacation above, the unit employee will only be entitled to receive paid vacation from his current employer in an amount (pro-rated to quarter of days) for the period of time the unit employee has worked for the covered employer.

b)    The Employer reserves the right to schedule vacations during the vacation period in accordance with the efficient operation of its facility. The Employer agrees, however, to give due consideration to the desires of the employees.   In the event that two or more employees desire to take vacations at the same time, seniority shall prevail between or among them.

c)    If the employment of any employee covered by this agreement is terminated or ceases for any reason, except for theft, such employee shall receive accrued vacation pay, using the amounts in parenthesis above, calculated from the anniversary date of hire.

In the event that an employee goes to work for another covered employer, without a Break in Service, as defined in Article 33 below, an employee shall continue accruing vacation based on their original date of hire with any covered employer.   However, the current employer

shall only be liable for vacation pay that accrues while the employee is actively in their employ.

d)    Vacation time shall be taken in blocks of one (1) week only unless such other  time is specifically agreed to by the Employer.

e)    Service employees in predominantly A/C shops must take vacation between September 1st and May 1st, when only having two (2) weeks vacation time.  In predominantly heating shops it will be taken between May 1st and

23

September 1st when only having two (2) weeks vacation time.

f)    Service employees in predominantly A/C shops who have accumulated more then two (2) weeks vacation time will be entitled to schedule their additional time during the period of May 1st through September 1st. In predominantly heating shops that have accumulated more than two (2) weeks vacation time will be entitled to schedule their additional time during the period of September 1st through May 1st.

## ARTICLE 22.  NO DISCRIMINATION

a)    The Employer shall not discriminate against any person because of membership  in the Union.

b)    The Employer shall not discriminate in the equal distribution of work within the bounds of skill and knowledge of the employees involved in the particular type of job classification.

c)    The provisions of this Agreement shall be applied to all employees covered by this Agreement without discrimination because of race, color, religion, national origin, sex or age, as provided by law.

## ARTICLE 23.  SICK LEAVE

a)    All employees covered by this Agreement, who have more than one (1) year seniority shall be entitled to five (5) days sick leave per year.

b)    All employees with less than one (1) year seniority shall, after their ninth (9th) month of employ with a covered employer, receive one (1) day paid sick leave. Such employee shall receive an additional day of paid sick leave in their twelfth (12th) month of employ with their employer.

c)    Unused sick time is to be paid out at the end of the year (based on the employee anniversary date of hire).

d)     In addition to sick leave benefits provided in this Article, employees performing work in the City of New York shall be entitled to sick leave benefits required by the New York City Sick Leave Act. These sick leave benefits shall not pyramid.

e)     The parties understand and acknowledge that during the term of this Agreement, New York City's "Local Law 46 of 2013" a/k/a "Earned Sick Time Act" ("ESTA") will be effective. By virtue of the existence of this Article 23 (Sick Leave) and other paid days off benefits set forth in this Agreement, the parties expressly waive the provisions and benefits of ESTA in accordance with ESTA § 20-916 [Collective bargaining agreements] and/or any other section of ESTA. The parties acknowledge and agree that the paid days off benefits set forth in this Article 23 (Sick Leave) and elsewhere in this Agreement provides a comparable benefit to the employees covered by this Agreement and the parties are satisfied with such benefits.

f)     It is agreed that the Employer may require employees to use any accrued paid leave benefit (e.g., paid vacation, etc.) if the employee requests a day off for sickness/illness and the employee has already exhausted his/her paid sick leave.

## ARTICLE 24.  BEREAVEMENT LEAVE

a)     All employees covered by this Agreement shall, after one (1) year, be entitled to three (3) days bereavement leave and pay if such leave falls on a regular work day, at their regular hourly rate, in the event of a death in the "immediate family". For the purposes of this Article, the term immediate family shall be limited to the employee's spouse, children, mother, father, mother-in-law, father-in-law, grandparents, brothers, and sisters. Bereavement leave and pay shall be limited to the day before the funeral, the day of the funeral and the day after the funeral. The Employer reserves the right to request satisfactory evidence to support a claim for benefits under this Article.

**ARTICLE 25.  JURY DUTY**

After one (1) year of employment with the same Employer, all employees covered by this Agreement will be allowed up to one (1) week every three (3) years for Jury Duty, and will receive the difference between the pay for Jury Duty and the employees' regular hourly rate.  This jury duty leave shall not apply to Grand Jury Duty.  Employees must furnish a copy of their jury duty slip to the employer.

**ARTICLE 26.  LEAVE OF ABSENCE**

a)    Any employee becoming ill, for reasons other than a work related injury, shall be entitled to a leave of absence for a personal illness for up to sick (6) months during any twelve (12) month period, and said employee shall be entitled to reinstatement upon application to his former position without loss of seniority.  An employee injured on the job shall be entitled to reinstatement to his former position without loss of seniority upon application within one (1) year of the leave of absence caused by the injury.

b)    Seniority shall continue to accrue during paid leave, military leave, and periods  for which the employee receives disability benefits or worker's compensation.

**ARTICLE 27.  WAGE RATES**

**(a)    Effective July 1, 2022, the minimum starting hourly wage rates that each employee shall receive shall be:**

**Pipefitter, Steamfitter, Plumber, Fire Sprinkler  (JATF Program)**

| | |
|---|---|
| Journeyman A | $35.62 |
| 5th Year Apprentice | $30.46 |
| 4th Year Apprentice | $24.20 |
| 3rd Year Apprentice | $19.58 |
| 2nd Year Apprentice | $17.50 |
| 1st Year Apprentice | $16.00 |

26

**Sheet Metal (JATF Program)**

| | |
|---|---|
| Journeyman A | $35.62 |
| Journeyman B | $30.46 |
| 4th Year Apprentice | $24.20 |
| 3rd Year Apprentice | $19.58 |
| 2nd Year Apprentice | $17.50 |
| 1st Year Apprentice | $16.00 |

**Service**

| | |
|---|---|
| Master Technician/Journeyman | $35.62 |
| Senior Technician IV | $33.90 |
| Senior Technician III | $32.18 |
| Senior Technician II | $30.46 |
| Senior Technician I | $24.20 |
| Technician II | $19.58 |
| Technician I | $17.50 |
| Helper | $16.00 |

**Non-Registered Pipefitter/Steamfitter/Plumber/Fire Sprinkler/
Sheet Metal Worker**

| | |
|---|---|
| Journeyman A | $35.62 |
| Journeyman B | $30.46 |
| Journeyman C | $24.20 |
| Journeyman D | $19.58 |
| Helper II | $17.50 |
| Helper I | $16.00 |

**WAGE INCREASES**

| Service | 7/1/2022 | 7/1/2023 | 7/1/2024 |
|---|---|---|---|
| Master Tech/Journeyman | $2.00 / hr. | $1.00 / hr. | $1.00 |
| Senior Technician IV | $ 1.60 | $ .80 | $ .80 |
| Senior Technician III | $1.20 | $ .60 | $ .60 |
| Senior Technician II | $1.00 | $ .50 | $ .50 |
| Senior Technician I | $ .80 | $ .40 | $ .40 |
| Technician II | $ .60 | $ .30 | $ .30 |
| Technician I | $ .40 | $ .20 | $ .20 |
| Helper | $ .20 | $ .10 | $ .10 |

**Non-Registered Pipefitter/Steamfitter/Plumber/Fire Sprinkler/
Sheet Metal Worker**

| Classification | 7/1/2022 | 7/1/2023 | 7/1/2024 |
|---|---|---|---|
| Journeyman A | $2.00 / hr. | $1.00 / hr. | $1.00 / hr. |
| Journeyman B | $1.60 | $ .80 | $ .80 |
| Journeyman C | $1.20 | $ .60 | $ .60 |
| Journeyman D | $ .80 | $ .40 | $ .40 |
| Helper II | $ .60 | $ .30 | $ .30 |
| Helper I | $ .40 | $ .20 | $ .20 |

**\*\* It is understood that the above-referenced hourly wage rates are the minimum wage rates that each employee shall receive an hourly wage increase of at least the amount for their classification except registered apprentices.**

### ARTICLE 28. COPE

The Employer agrees to deduct and transmit to a USWU sponsored or other designated COPE, from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by the COPE sponsor the sum of $0.10 per hour for every hour paid to such employee. These transmittals shall occur for each payroll period and shall be accompanied by a list of the names of those employees for whom such deductions have been made and the amount deducted for each such employee.

### ARTICLE 29.  NO REDUCTION OF BENEFITS

No regular employee on the payroll shall be required to take a reduction in pay or loss of an economic benefit as a result of the execution of this Agreement, or the application of any of its provisions.  Notwithstanding the foregoing, it shall not be considered a violation of this Article or of this Agreement if the Employer, for good cause, reduces the wage of any employee provided the employee is paid at or above the minimum rate set forth in this Agreement.

**ARTICLE 30.  PREVAILING WAGES**

a)    Notwithstanding anything to the contrary contained in this Agreement, or otherwise, it is expressly understood and agreed that the EMPLOYER shall pay a wage scale (including fringe benefits) and provide working conditions in full compliance with the rules, regulations, requirements and directives required by and incorporated in public work contracts which they execute and undertake with any Federal State or Municipal agency or authority or subdivision thereof.

b)    The Prevailing Wage Schedule must be posted at each job site at the beginning of each job and whenever a change in the rate occurs. This schedule shall be made part of and incorporated herein and shall be binding as conditions of employment.

**ARTICLE 31.  ON CALL**

a)    Any employee that is designated to be on call for that week will be paid an extra one hundred dollars ($100.00).

**ARTICLE 32.  TRAVEL PAY**

a)    Any employee using his/her vehicle, at the Employer's request after reporting to work at either the job or shop will be paid fifty-seven ($0.57) cents per mile.

b)    An employee who performs out of town work, requiring an overnight stay, will be paid an additional fifteen (15) minutes for every hour (75 minute hour) worked at straight time. Time paid pursuant to this Article shall not be considered hours worked for the purposes of computing overtime.

c)    Stays out of town will be paid for by the Employer, consisting of payment for accommodations and a thirty-five ($35.00) dollar meal allowance.

**ARTICLE 33.  BREAK IN SERVICE**

For employees who have worked for more than one (1) year with the same employer, there shall be no break in service for the purposes of calculating an employee's benefits pursuant to this Agreement provided the employee's period of time, between Employer's bound by this Agreement, i.e., break in service, is no more than one (1) year. An employee, upon beginning work for a subsequent Employer, does not retain his seniority for purposes of layoff and discharge.

**ARTICLE 34.  SAVINGS CLAUSE**

If any provision of this Agreement should be held or adjudged illegal, or in violation of any present or future law, such adjudication shall not invalidate any other portion or provision of this Agreement, nor relieve any party thereto from their liabilities and obligations under this Agreement, but the remainder shall continue in full force and effect.  In the event that any portion of said Agreement is held illegal as above-mentioned, the parties agree to meet promptly in order to agree upon a proper and legal substitute.

**ARTICLE 35.  ASSOCIATION MEMBERSHIP**

a)    In order to adequately protect the Mechanical Contracting Industry ("Industry") and in the interests of the Employers and Employees in the Industry, effective the date of execution of this Agreement, each Employer shall become and remain a member of the Long Island and New York Mechanical Contractors' Association ("Association") during the term of this Collective Bargaining Agreement, and shall contribute as membership dues thereto on a monthly basis the sum of $0.10 for each hour worked by each employee covered under this Agreement, commencing on first day of the month after the thirty first (31st ) day of employment for each employee.

b)    The Association is designed for and authorized by the Employer to

act as the Employer's agent until the Employer revokes said authorization to provide and perform the following actions: 1) to increase employment opportunities through promotional activities which will increase the use of the Industry and its Employees covered under this Agreement; 2) to acquaint Employers and Employees with the most efficient safety regulations for the safety of the Employees as well as the training of Employees in first aid and other safety programs; 3) to conduct educational research directed at the utilization of new and safer mechanics and equipment for the protection of Employees covered under this Agreement; 4) to provide and assure equitable Industry labor relations through established Grievance Panels and Arbitration for the expeditious and equitable hearings of the grievances of Employees and Employers covered herein; 5) to assist in defraying the costs of the time spent by the Association representing management in connection with the negotiations for this Collective Bargaining Agreement and any amendments, modifications or successor agreements with the United Service Workers IUJAT Local 355 until and unless the Employer timely and unequivocally revokes it authority to do so in accordance with applicable law; 6) to educate Employers in connection with legal issues effecting the Industry; and 7) for the administrative costs in administering the Association.

c)    It is understood and agreed that the Association may use any and all collection methods to collect any monies due and owing the Association pursuant to paragraph (a) of this Article.  Said collection efforts may proceed with or without any notice to the Union.

**ARTICLE 36.  TOOLS**

Listed below are the tools that are supplied by the employee.  The employee shall be responsible for maintaining a complete set of tools. The contractor will supply any other tools:

| SERVICEMEN TOOL LIST | |
|---|---|
| Digital Meter | Electric Leak Detector |
| Two Manifold Sets | One set of Bending Tools |
| One 1/8" to 7/8" Cutter | One 1/8" to 1 1/8" Cutter |
| One set of Allen Keys Standard | One set of Allen Keys Metric |
| One ¼" to ¾" Flare and Swaging Kit | One set of Combination Wrenches ¼" to 1" |
| One Flashlight | One 3/8" Socket Set |
| One set of adjustable wrenches (6", 8" & 10") | One Pair of Cutting Pliers |
| One set of Stillson Wrenches (8" & 12") | One Pair of Linesmen Pliers |
| One pair of Pump Pliers | One Hack Saw |
| One set of Screwdrivers (1, 2, 3 Phillips & 4,6,8 Flat Head) | One set of files |
| One Ball Peen Hammer | Two Refrigeration Service Wrenches (small & large) |
| One Center Punch | Two Digital Pocket Thermometers |
| One Schearder Core Removal Tool | 1 Set of Nut Drivers (3/16 to 7/16 inch) |
| Digital Amprobe | Pipe Wrench (12", 18" & 24") |
| Torch Set-Up (no tanks) | Keyhole Saw |
| Vise Grips (small & large) | Tape Measure |
| Torpedo Level | 12" Adjustable Wrench |
| Wire Brush | Utility Knife |
| Refrigerator Gauge – R410 & R22 | Cordless Drill |
| | |

| PIPE FITTERS / STEAMFITTERS / PLUMBERS TOOL LIST | |
|---|---|
| Pipe Wrenches 24", 18", and 14" | Torch set up (no tanks) |
| Torpedo Level | Smooth Jaw Pipe Wrenches 18" , 14" & 24" |
| Tape Measure | 2' Level |
| 8" Channel Locks, 12" | Side cutting pliers |
| 12"Adjustable Wrenches | Vise Grip |
| ¾ Ratchet | Nut Drivers ¼", 5/16" & 3/8" |
| 1/2 " – 11/8 sockets | 8"  Adjustable Wrench |
| Hacksaw | ½ " Rachet W ½ - 11/4" sockets |
| Wire Brush | Flat Blade screwdriver |

| PIPE FITTERS / STEAMFITTERS / PLUMBERS TOOL LIST | |
|---|---|
| 1 set of Allen keys | Plumb Bob |
| 1 Phillips screwdriver/Flat Blade | Chalk Line |
| Combo & roofing Squares | Utility Knife |
| Ball peen Hammer | 3lb. Lump Hammer |
| Turbo Torch Set | Tr-Squares |
| Open end wrenches up to 1" | Cordless Drill |

| FIRE SPRINKLER  TOOL LIST | |
|---|---|
| Pipe Wrenches 24", 18", and 14" | Cordless Drill |
| Torpedo Level | Smooth Jaw Pipe Wrenches 18" & 14" |
| Tape Measure | 2' Level |
| 8" Channel Locks | Side cutting pliers |
| 12"Adjustable Wrenches | Vise Grip |
| ¾ Ratchet | Tin Snips |
| 1/2 " – 11/8 sockets | 8"  Adjustable Wrench |
| Hacksaw | ½ " Rachet W ½ - 11/4" sockets |
| Wire Brush | Flat Blade screwdriver |

| SHEET METAL TOOL LIST | |
|---|---|
| Pipe Crimper | Snap Lock P unch |
| Hand Notcher | Torpedo Level |
| Hand Seamers | Nut Drivers ¼", 5/16" & 3/8" |
| Folding Tools | Tape Measure 25" |
| Combo Square | Hammer |
| Utility Knife | Allen keys |
| Key Hole Saw | Scratch Awl |
| Lineman's Pliers | Hacksaw |
| Vise Grips (Large & Small) | Caulking Gun |
| Open End Wrenches | 3/8 Socket Set, 5/16", ¼" |
| Duct Knife | Duct Stretcher |
| Dividers | Sips Shears |
| 2 Screw Drivers | Snips Lefts/Rights |
| Bulldog Snips – Flat | 2 Phillips Screwdrivers |

| SHEET METAL TOOL LIST | |
|---|---|
| Tie Tool | Tool Belt |
| Hand Held Whitney Punch | Cordless Drill |
| Tri-Squares | |

## ARTICLE 37 – IUJAT 401K

### International Union of Journeymen
### and Allied Trades 401(k) Retirement Plan

The undersigned Employer agrees to be a Participating Employer in the International Union of Journeymen and Allied Trades 401(k) Retirement Plan ("Plan" or "401(k) Plan" or "IUJAT 401(k) Plan") for all eligible employees covered by this Agreement, and unless otherwise agreed in writing, any renewal, modification, or extension thereto.

Employers are responsible to make authorized weekly/biweekly pre-tax deductions of the percentage of the employee's current earnings for each pay period for each employee who has authorized that such payroll deduction be made in a written elective deferral agreement.

Employers that utilize payroll services will direct their payroll services to make the authorized weekly/biweekly pre-tax deductions of the percentage of the employee's current earnings for each pay period for each employee who has authorized that such payroll deduction be made in a written elective deferral agreement.  Current earnings include, but are not limited to, regular, sick, vacation, personal, overtime, retro and commission pay.

A check in the amount of the total of all such deductions shall be mailed to the Fund as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.   The check is to be made payable to the IUJAT 401(k) Retirement Plan and is to be mailed to the following address:

IUJAT 401(k) Retirement Plan Attention: Fund Administrator

34

145 Huguenot Street
Suite 100
New Rochelle, NY 10801

A remittance report indicating the name, social security # and the 401k amount deducted from each employees' current earnings and any catch-up contributions, must be provided by email, facsimile, electronically or in writing at the time the deductions are paid to the Fund Office.

If this collective bargaining agreement calls for an Employer Contribution, the Employer must ensure that the Employer Contribution is received by the Fund Office no later than the first of the succeeding calendar month,

Provide the Fund Office with a detailed remittance report indicating the name of the employee, the employee's social security # and the amount that is being contributed on behalf of the employee,

Mail the Employer Contribution to:
IUJAT 401(k) Retirement Plan
Attention: Fund Administrator 145 Huguenot Street
Suite 100
New Rochelle, NY 10801

The Employer agrees to be bound by, and hereby assents to the Trust Agreement, the rules and regulations and collection procedures of the Plan, the composition and membership of the Board of Trustees, and the Plan Documents in effect and as all may be amended from time to time.

Participation by the Employer is subject to continued acceptance by the Trustees of the IUJAT 401(k) Plan.

The Employer understands that participation in the Plan of its employees is conditioned on the Employer's compliance with Sections 401 (a) (4), 410 (b) and 401(k) of the Internal Revenue

Code. Participation in the IUJAT 401(k) Plan is further conditioned

upon the Plan not being a top-heavy Plan under Section 416 of the Internal Revenue Code.

The Employer agrees to provide the information and certifications required by the Trustees to monitor compliance with the Plan and the Internal Revenue Code, and regulations, including compensation and other information regarding all bargaining unit employees of the Employer. If the Employer fails to comply with Sections 401(a)(4), 410 (b) or 401(k) of the Internal Revenue Code, or if the Plan is top-heavy with respect to the Employer's employees or if the Employer fails to provide information, or the certifications required by the Trustees, the participation of the Employer's employees shall terminate, and such other remedies as may be available shall be applicable. All remedies and rights available to the Plan under ERISA shall be applicable to the payments required hereunder.

The Employer agrees to provide the IUJAT 401(k) Plan with all the information required by the Internal Revenue Service (IRS), for all of the employees covered by the Collective Bargaining Agreement, on a CALENDAR YEAR basis, by no later than January 16th of the following year. Contributions to the Plan shall be made under the following provisions:

**Options:**

**Elective Deferral Contributions:**

For the duration of this Agreement and until modified by the parties in collective bargaining, the Employer shall deduct a fixed percentage or amount specified by an eligible Participant in writing (Deferral Agreement) from the Compensation of the Participant in the Plan as an Elective Deferral Contribution. The Participant may modify or eliminate the fixed percentage or amount in accordance with provisions and limitation of the Plan by filing a new elective deferral agreement. Elective Deferral Contributions are fully (100%) vested and nonforfeitable.

**Additional Contributions:**

For the duration of this Agreement and until modified by the parties in collective bargaining, effective July 1, 2022, the Employer shall contribute $.25 per hour for all hours paid of compensation for each eligible Participant covered by this Agreement.  Effective July 1, 2023 the Employer shall contribute $.57 per hour for all hours paid of compensation for each eligible Participant covered by this Agreement.   Effective July 1, 2024 the Employer shall contribute $.88 per hour for all hours paid of compensation for each eligible Participant covered by this Agreement Additional Contributions are subject to the Vesting Percentage.

In the event the provisions herein are determined by the Trustees of the Fund to be inconsistent with provisions of the Plan, the parties agree that the Plan provisions shall be substituted in place of the provisions herein provided, however, such substitution is not to materially change the amount of the Employer contribution contemplated hereby.  Any dispute as to the effect or application of such substituted provisions shall be subject to the provisions of the grievance/arbitration clause in the collective bargaining agreement.

The Employer agrees that the IUJAT 401(k) Plan will be allowed on an annual basis, to perform an audit of the payroll records, to ensure that all participants' salary deferral amounts, and any Employer Contributions have been recorded and paid on a timely basis.

**ARTICLE 38.  DURATION AND TERMINATION**

This Agreement shall become effective as of **July 1, 2022.** and shall remain in full force and effect until midnight, **June 30, 2025**, and unless written notice of a desire for change therein or to terminate the same be given by either party to the other at least sixty (60) days and not more than ninety (90) days prior to such expiration date, it shall continue in effect for an additional year thereafter.

In the same manner, this Agreement shall remain in effect from year to year thereafter, subject, however, to the right of each party to terminate it at the expiration of any such year by giving notice, in writing, to the other party at least sixty (60) days and not more than ninety (90) days prior to the expiration of such year.

IN WITNESS WHEREOF, the parties have caused these presents to be signed and sealed by their respective officers' thereunto duly authorized the day and yea first above-written.

Contributions are not considered          UNITED SERVICE WORKERS UNION,
"received" until they are in the hands     IUJAT, LOCAL 355 Of the Fund Administrator.

**LI & NY MECHANICAL CONTRACTORS' ASSOCIATION**

Craig Schiavone, President

Christopher Prydatko, Vice President

Gandolfo Schiavone
Treasurer

Kevin Barry, Business Agent

Thomas McDonald, Chief Shop
Steward



# *PARTNERING TOGETHER*
# *FOR A BETTER*
# *MECHANICAL INDUSTRY*



