# EXHIBIT

# "C"

## DELINQUENCY COLLECTION GUIDELINES

### UNITED WELFARE FUND
### Welfare Division & Security Fund Division

### I.

### STATEMENT OF POLICY

It is the policy of the United Welfare Fund (the "Welfare Division and Security Division") to make diligent and systematic efforts to collect all employer contributions when they are due and payable.

The Board of Trustees of the United Welfare Fund (the "Trustees") has the legal right to exercise all remedies allowable under the trust agreement establishing the United Welfare Fund (the "Trust"), the applicable collective bargaining agreements, and under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") , including but not limited to:

A.    The right to establish a date on which contributions are due, and the format in which remittance reports supporting such contributions must be made, provided that such requirements are not inconsistent with the terms of the Trusts or the applicable collective bargaining agreements;

B.    The right to conduct a review of the records of all employers that are required to contribute to the United Welfare Fund including, but not limited to, reviews of payroll ledgers, federal and state tax returns, cash disbursement journals, general ledgers, and all other such books and records of the employers;

C.    The right to establish or modify these guidelines or any procedures established hereunder;

1

D.    The right to require that the delinquent employer pay interest, liquidated damages, attorneys' fees and costs, and any other expenses incurred by the Welfare Fund in determining the amount of a delinquency and in collecting the delinquency;

E.    estimate the amount of delinquent or deficient contributions due from an Employer in any month in which the Employer has failed to submit a remittance report to the Trust Fund, or has failed to sufficiently respond to a document request from the Trust Fund's auditors;

F.    appoint permanent arbitrators to resolve issues concerning collections of contributions;

G.    allocate monies due or received from Employers;

H.    delegate their powers and authority concerning the collection of contributions to a Committee or the Fund Administrator;

I.    settle, compromise and/or waive claims concerning the collection of contributions and related charges, including but not limited to interest, liquidated damages, audit costs, attorneys' fees, court costs or other fees in accordance with applicable law;

J.    initiate all other steps, and to perform all other acts, that are necessary and appropriate, in the sole and absolute discretion of the Board, in order to collect Employer contributions payments due to the Funds in a timely and expeditious manner; and

K.    establish or modify these Procedures or any other Employer collection, audit or payroll review program established hereunder.

2

The procedures set forth herein shall be followed unless the Trustees determine, in their sole and absolute discretion, that any procedure should be waived based on the facts and circumstances of a particular case.

## II.

## THE WELFARE FUND'S COLLECTION PROCEDURES

No provision in these guidelines shall modify or otherwise supersede the terms of any applicable collective bargaining agreement or the Trust establishing the Welfare Fund.

In accordance with the Trust, applicable collective bargaining agreements, ERISA, and the above Statement of Policy, the Fund Administrator shall coordinate the collection of delinquent contributions and interest.

A.    <u>Date Contributions Due</u>.  Contributions and supporting remittance reports are due on the date each week or month that the employer's collective bargaining agreement requires payment or, if the collective bargaining agreement does not specify a date, by the 15th day of the current month in which covered work is being performed (hereafter "Due Date").

B.    <u>Remittance Reports</u>.  Contributions must be accompanied by completed remittance reports supporting such contributions on such forms (print or electronic) as may be prescribed and furnished by the Fund Administrator.  The Fund Administrator may approve the submission of reports in other forms if he determines that such forms will not cause additional burden or expense to the Welfare Fund.

C.    <u>Determination of Delinquency</u>.   An employer is considered "delinquent" if owed contributions are not received from the employer by the close of business on the date ten (10) calendar days from the Due Date, or if the Fund Administrator has reason to believe that amounts reported and paid do not reflect the amount of contributions actually owed to the

Welfare Fund ("Delinquency Date").  Notwithstanding the foregoing ten (10) day grace period, the amount of interest owed by a delinquent employer shall be calculated from the Due Date of the contributions in question, and not the Delinquency Date.  The Fund Administrator may also consider the employer delinquent if it has not submitted remittance reports along with the contributions. Monies found due as a result of an audit conducted pursuant to Section III, Audit Procedure, are considered delinquent at the time the audited delinquency is determined.

In order to determine whether an employer is delinquent, the Fund Administrator shall monitor the timeliness of incoming reports and contributions.

D.    <u>Business Agent Collection Steps</u>.  The Business Agent should initiate collection phone calls and/or shop visitations if payment has not been received by the "Due Date".  The Business Agent should inform the shop that if payment is not immediately made, the shop will be subjected to interest charges, liquidated damages at the rate of 20%, legal action and loss of medical coverage through the United Welfare Fund in which case, the Employer will be held responsible for any medical claims incurred by employees.

E.    <u>Welfare Fund's Demand Letters</u>.  Upon learning of a delinquency (some time on or around the "Delinquency Date"), the Fund Administrator shall send by certified mail, return receipt requested (or by overnight mail, or by both facsimile and regular mail), a notice of delinquency (See, Letter A).  The notice shall demand immediate payment of all delinquent contributions, plus interest from the date the payments were due to the date of payment, and shall inform the delinquent employer that, unless the full amount due is received in the Welfare Fund's offices within ten (10) days of the date of the notice, the matter will be referred to the Welfare Fund's Delinquency Litigation Counsel for collection.  The notice shall further advise the employer that if litigation is necessary, the employer shall also be liable for attorneys' fees and

4

costs and liquidated damages. If the employer has refused to permit an audit, such demand shall also be made in this letter, or a separate letter.

At the discretion of the Fund Administrator, a second demand letter may be sent to the employer prior to referral to counsel if the Fund Administrator believes that a second letter will be effective in collecting the amounts due.

F.      Payment Schedules. If a delinquent employer requests a payment schedule, claiming a financial inability to pay in full, the Fund Administrator is authorized to prepare and execute a payment schedule permitting the employer to pay the balance due in no more than twelve (12) payments, provided that:

(1)     the Fund Administrator is satisfied that, notwithstanding the financial difficulties necessitating installment payments, the employer will be able to meet any installment obligation;

(2)     the payment schedule is set forth in writing, and is executed by both the Fund Administrator and the employer;

(3)     the payment schedule requires payment of interest at the rate of 18% per annum, or 2% above the highest prime rates during the period of non-payment, whichever is greater, from the date of the contributions Due Date until the date each payment is made. The Fund Administrator is authorized to provide in such payment schedule that if the employer timely performs all of its obligations thereunder, the late payment interest will be payable at the rate of 10% per annum;

(4)     the employer agrees to submit current contributions during the period the delinquent amount, plus interest, is being repaid. Unless the interest amount is set

forth in the payment schedule, it will be calculated and billed upon receipt of the
final principal payment. Said interest shall be due and payable upon billing.

(5)    the payment schedule shall provide that any default by the employer will result in
legal action by Delinquency Litigation Counsel without further notice to the
employer.

G.    **Notice of Intent to Cancel Insurance Coverage (Welfare Division)**:    If an
invoice remains unpaid for two (2) months after the Due Date, a letter requesting payment shall
be sent by the Welfare Division to the Employer.    The letter requesting payment shall also
include notification to the Employer of the following information:

a.    That the Funds will assess against the Employer the full amount of costs
attributable to their collection efforts including, but not limited to,
attorneys' fees, collection agent fees, liquidated damages, additional
interest, and all other applicable expenses and costs; and

b.    That the Funds will terminate the employee's insurance coverage if
contributions are not received by the date set forth in the letter and that the
Employer will be liable for all valid claims of benefits submitted to the
Funds during the ensuing delinquency period.

The Welfare Division will also send a letter to the Employer's employees
notifying the employees of the delinquency and the potential loss of coverage if such
delinquency remains unpaid.

The medical termination letter(s) shall inform the Employer that the termination
of medical coverage due to an unresolved delinquency in a "blue collar" bargaining unit
represented by a participating Union will also result in the termination of medical benefits for all

6

office, clerical and/or managerial groups affiliated with the blue collar unit. The Administrator of the Fund shall have the discretion to determine any question concerning which is/are the appropriate affiliated office, clerical and/or managerial group to be affected by this notice of termination. The Administrator's decision shall be subject to review by the Trustees on the basis of whether that decision was arbitrary or capricious.

      H.     <u>Referral to Delinquency Counsel</u>.  In the event that the shop remains delinquent 60 days after the Due Date, the Fund Administrator shall refer such matters to the Welfare Fund's Delinquency Litigation Counsel for action in accordance with Section IV, Legal Action and Settlement.  Delinquencies to be referred include:

      1.     <u>Delinquent Contributions</u>.  Contributions not received sixty (60) days after the Due Date.

      2.     <u>Delinquent Interest</u>.  When an employer has paid delinquent contributions, but, after a demand has been made, has failed to pay accrued balances of unpaid interest that equal or exceed $500.00.

      3.     <u>Failure to Permit Audit</u>.  When, after a demand by the United Welfare Fund or the United Welfare Fund's auditors, an employer has refused to permit an audit.

      I.     <u>Mistaken Contributions</u>.   If an employer believes it has overpaid contributions, the employer shall promptly bring the matter to the attention of the Fund Administrator. The Trustees shall consider the matter under the provisions of the policy it has established regarding mistaken contributions.

7

## III.

## AUDIT PROCEDURE

Pursuant to the Trust, the collective bargaining (or other written) agreements and ERISA, the Board is authorized to examine and audit periodically the books and records of the Employers required to contribute to the Fund. The purpose of the audits is to determine whether Employers are fully, accurately and timely complying with their obligation to make contributions to the Fund and to uncover any unpaid contributions and interest which the Fund may, thereafter, collect.

1. Frequency of Audits:

The Board shall determine the frequency of audits, in its sole and absolute discretion. Counsel may also request additional Employer audits during the course of their collection activities or litigation. The Board will periodically review the cost of the audit program (in relation to, among other things, the contribution amounts and interest collected, and the overall effectiveness of the program in encouraging Employers to contribute to the Fund in a timely and accurate manner), and from time to time determine, in its sole and absolute discretion, whether to reduce or expand the number of Employers audited each year, the extent of the audit, and/or the format of the audit report.

2. Employer's Obligation to Permit and Cooperate:

Each Employer is required to make available to the Fund's accountants or other representatives (referred to hereinafter as the "Auditors") all of its accounts, books and records (as well as all records of any of its affiliates, subsidiaries, alter egos, joint ventures, successors or other related companies or affiliates), that are deemed necessary by the Auditors, at all reasonable times at the Employer's place of business. The right of the Fund to conduct an audit of an Employer's (or, where applicable, an Employer's payroll company or similar agent's) books and records shall survive the termination of an Employer's collective bargaining agreement, any other written agreement under which the Employer is contributing to the Fund and/or any bankruptcy or similar insolvency proceeding, dissolution, and/or any change in name, location or form of the Employer.

3. Audit Procedure:

Unless otherwise specified by the Board, the following procedures will be followed in connection with all such Employer audits.

a. Employer Notices:

The Auditors or the Fund shall send advance notice to the Employer advising it that an audit is to be conducted, the date on which the audit is to be conducted, the period to be covered by the audit, and listing the books and records of the Employer required to be made available. Copies of all written notices of

audits sent by outside Auditors shall also be sent to the Fund and, if there are ongoing collection actions or litigation involving such Employer, copies of all such notices of audits shall also be sent to Counsel.

b.  Adjournment of Audit:

The Employer shall be permitted to adjourn a scheduled audit date for up to thirty    (30) calendar days, provided that the Employer has given the Auditors advance written notice of its need for an adjournment and a reasonable explanation of the need for the delay.  Adjournments of greater length may be granted, in the discretion of the Fund Administrator, based upon the Employer's reasonable request that the audit be scheduled at a time that would be significantly less disruptive for the Employer.

c.  Uncooperative Employers:

In the event notice of an audit has been sent to the Employer, and the Employer  (i) refuses to permit an audit of its books and records (as defined herein), (ii) refuses to cooperate with the specific requests of the Auditors, or (iii) has failed to maintain (or no longer has) possession of the books and records necessary for an audit, the Fund Administrator shall refer the matter to Counsel for legal action.  An Employer shall be considered to have refused to permit an audit when it:
(i) refuses to permit the Auditors access to its specified books and records;
(ii) seeks to continue to postpone the scheduled audit date; or
(iii) under such other circumstances as a subcommittee of the Board may determine (in its sole and absolute discretion).

d.  Audit Report:

Following an audit, the Auditors shall provide a copy of the Audit report to the
    Fund Administrator and Controller.  If such Audit report reveals that an Employer
    has failed to pay all required contributions when they are due, the Fund shall send
    a notice of delinquency and demand for payment to the Employer along with a
    copy of the Summary of Findings with respect to such Audit Report.

e.  Disputed Audits:

In the event an Employer disputes the audited amount found to be due and owing, the Fund Administrator will meet with the Employer to review the claimed errors.  In the event merit is found with respect to such review, the Fund Administrator will notify the Auditors of the findings and the need to adjust the audit report.  During the dispute review period set forth herein, undisputed amounts, and current contributions required under the CBA remain due and owing and must be paid promptly by the Employer (in order to avoid the assessment of additional interest charges and penalties by the Fund).

f.  Assumption of Amounts Owed by Uncooperative Employers:

9

In the event that an Employer fails, within twenty-one (21) days after written request, to produce all books and records to enable the Fund's Auditors to conduct the audit, or is otherwise uncooperative, the Fund Administrator, in his/her sole and absolute discretion,  may make a reasonable estimate of amounts due in each month of the audit period based upon such empirical data as may be available. For these purposes, the Fund Administrator's estimate of amounts due in each month of the audit period shall be considered reasonable if it is based on the average number of employees and/or hours as was reported by the Employer during the last 12 months for which reports were filed (adjusted, as appropriate, for any change in the rate of contributions) plus fifty (50%) percent. Such determination by the Fund Administrator shall be binding on the Employer and shall constitute presumptive evidence of the delinquency, pending adjustment, if any, until the earlier of such time as an arbitrator or other finder of fact (should the Funds pursue collection in a court) may enter an Award or judgment. Nothing in this paragraph shall be construed to signify that the Funds relinquish or abridge any of their rights to commence such other and further actions or legal proceedings to compel an audit of the requested books and records to enable the Fund auditors to conduct a thorough audit and to secure an award or judgement for any additional amounts, together with attendant interest, liquidated damages, audit and attorneys' fees and other costs of collection found to be due and owing as a result of such audit.

        G.      <u>Termination of Participation</u>. If an employer ceases to have an obligation to contribute to the United Welfare Fund under the collective bargaining agreement or under such other participation agreement or under applicable law, the employer shall remain subject to these audit procedures for the purpose of verifying that the employer made the proper contributions

during the time period in which the employer was obligated to contribute to the United Welfare Fund.

## IV.

## LEGAL ACTION AND SETTLEMENT

A.    In all matters referred to counsel, the United Welfare Fund's Delinquency Litigation Counsel shall follow the procedures set forth herein.

B.    Demand Letter.  Upon referral of a delinquency, Delinquency Litigation Counsel shall send a letter, by certified mail, return receipt requested (or overnight mail, or by fax and regular mail), to the employer demanding payment of the delinquent contributions, plus interest. Such letter shall also advise the employer of its liability for liquidated damages, attorneys' fees audit and other costs of collection in the event a lawsuit or arbitration is commenced.

In the event that a matter is referred to counsel due to an employer's refusal to permit an audit, or failure to pay accrued interest, counsel shall send a demand letter to the employer in same manner prescribed above, demanding that the employer take appropriate corrective action and describing the legal recourse available to the United Welfare Fund.

C.    Legal Action.  If an employer fails to pay fringe benefit contributions demanded by Delinquency Litigation Counsel in full within ten (10) days of the date of the demand letter, Delinquency Litigation Counsel shall thereafter endeavor to initiate appropriate legal action to recover any delinquency; or to recover owed interest; or to seek an order that the employer submit to an audit; or to seek an order that the employer post a bond; or to seek an order requiring the employer remain current in its submission of contributions and/or remittance reports; and/or other actions approved by the Trustees. Such legal action may consist of lawsuits commenced in Federal Court or, if deemed a more expedient and cost effective method of

11

collection in any particular case, arbitrations under the applicable collective bargaining agreement. Arbitration may also be demanded in the name of the Fund before an arbitrator approved by the Trustees for such purpose. The Trustees hereby approve arbitrators Elliott Shriftman, Aaron Shriftman and J.J. Pierson as arbitrators approved to hear and decide such disputes. Delinquency Litigation Counsel and the Administrator shall designate the arbitrator for each case.

      D.      <u>Settlement Authorization</u>. Delinquency Litigation Counsel is authorized to enter into settlement negotiations with delinquent employers. Authority to make and accept settlement demands, accept settlement offers, and decline settlement proposals shall be delegated as set forth below:

      1.      <u>100% of Contributions and Interest</u>. Without further approval of the Trustees, Delinquency Litigation Counsel is authorized to settle claims against delinquent employers in instances where the delinquent employer promises payment of the delinquent contributions owed, and interest thereon, in no more than twelve (12) monthly installments.

      2.      <u>Settlement for Less Than the Sum of 100% of Contributions and Interest</u>. Any proposed settlement which includes provisions permitting employers to pay an amount equal to less than the sum of 100% of contributions and interest owed, and/or provides for payment over a period of time in excess of twelve (12) months, must be approved by a collections subcommittee of the Trustees composed of one Union Trustee and one Employer Trustee (the "Subcommittee"). Settlements requiring approval of the Subcommittee under these guidelines must be in writing and signed by the Fund

Administrator, or at least one of the approving Subcommittee Trustees on behalf of the United Welfare Fund, as well as by the employer.

E.    . Rejection of Settlement. Delinquency Litigation Counsel has the authority to reject any proposal for settlement that would require more than twelve (12)  payments or if its acceptance would result in collection of less than the total amount of contributions and interest owed. Such rejection shall be subject to the Subcommittee's subsequent review.

F.    Uncollectibility. Legal action shall be initiated in accordance with these procedures, and shall be litigated to its conclusion (i.e., to judgment, arbitrator's decision, or settlement), unless it is determined that it is unlikely that the contributions or interest sought can be collected from the employer even after a settlement or a judgment or arbitration decision in the United Welfare Fund's favor.  Such determinations shall be made by the Subcommittee based on the recommendation of Delinquency Litigation Counsel. Factors to be considered by Delinquency Litigation Counsel and the Trustees in making such recommendations and decisions include (but are not limited to):

1.    Whether the Welfare Fund has made reasonable, diligent and systematic efforts to collect the contributions due.

2.    Whether, due to the financial condition of the employer, it is unlikely that the Welfare Fund will collect the monies due.

3.    Whether the expenses of litigation and other collection efforts will exceed the amount sought, such that litigation is not prudent; and

4.    Any other factors that, in the discretion of Delinquency Litigation Counsel, may have a material bearing on the ultimate collection of the delinquent contributions or the policies or objectives of the United Welfare Fund.

13

Any recommendation by Delinquency Litigation Counsel against commencing a lawsuit or demanding arbitration, or litigating any pending action or arbitration to its conclusion, shall be submitted to the Subcommittee (and suit shall not be filed until a decision is reached by the Subcommittee). Decisions by the Subcommittee not to initiate, or to discontinue, any lawsuit or pending arbitration shall be committed to writing by Delinquency Litigation Counsel, and such writing shall include an explanation for the determination.

        G.     <u>Trustees' Decisions</u>. The Trustees, or the Subcommittee between scheduled Trustees' meetings, reserve the right to permit an employer to pay delinquent contributions, interest, liquidated damages, and attorneys' fees and costs over a period of time in excess of the period provided above, or to reduce the amount of contributions, interest, liquidated damages, and attorneys' fees and costs demanded from the employer; provided, however, that any such decision to extend the time for payment, or to compromise the amount demanded, complies fully with Prohibited Transaction Exemption 76-1 promulgated by the United States Department of Labor.

        H.     Notwithstanding the procedures set forth in these guidelines, the Trustees or Fund Administrator may refer any delinquent account to Delinquency Litigation Counsel at an earlier or later date than provided for herein where circumstances warrant that the collection action be expedited or delayed.

**V.**

**CALCULATION OF INTEREST LIQUIDATED DAMAGES, ATTORNEYS' FEES AND COSTS**

        A.     <u>Interest</u>. Interest owed by a delinquent employer shall be calculated from the date of the delinquent contributions were due, to the date they are paid to the Welfare Fund, at the annual rate of 18%.

14

B.    Liquidated Damages.  Liquidated damages, which shall be due and owing upon a favorable judgment or arbitration award in favor of the United Welfare Fund, shall be calculated as 20% of the principal delinquency amount found to be due and owing from the employer, or such other basis as set forth in the applicable collective bargaining agreement or under ERISA, whichever is higher. Liquidated damages may, in the discretion of the Administrator, be waived in whole or in part, upon a delinquent employer's faithful performance of a repayment plan.

C.    Attorneys' Fees and Costs.  Reasonable attorneys' fees, audit costs and other costs of collection shall, in accordance with ERISA or other applicable law, be due and owing upon a favorable judgment or arbitration award in favor of the United Welfare Fund.  Delinquency Litigation Counsel shall have the authority to determine the amount of the fees and costs to request from the Court or arbitrator as "reasonable" fees and costs based on their evaluation of each case in accordance with the applicable legal standards for such an awards. *De minimus* costs may be waived when they are determined by Delinquency Litigation Counsel to be administratively impractical to collect.

## VI.

## MISTAKEN CONTRIBUTIONS

A.    An employer that makes a contribution to the United Welfare Fund in excess of the amount required by the terms of the employer's collective bargaining agreement, participation agreement, the Trust or applicable law and under a mistake of fact or law (hereinafter referred to collectively as a "mistaken contribution") may request a refund of the amount of such mistaken contribution.  In no event shall the refund of a mistaken contribution violate Section 403 (c)(2) of ERISA. Furthermore, in no event shall any mistaken contribution be refunded where the mistaken contribution was made six months or more prior to the date (i)  the

15

mistaken contribution was discovered by the Fund or (ii) the employer requests the Fund for a refund of such mistaken contribution. This policy is implemented by the United Welfare Fund in accordance with ERISA's mandate codified in 29 U.S.C. Section 1103(c) (2), providing that a plan administrator may not go back more than six (6) months in returning mistaken employer contributions.

      B.      No credit or refund of mistaken excess contributions shall be granted by the United Welfare Fund without a written request for such refund having been received within six (6) months after the date that such excess contributions were received by the United Welfare Fund.

      C.      The credit or refund of a mistaken contribution shall be reduced by any direct or indirect cost, expense or liability incurred by the United Welfare Fund as a result of a mistaken contribution including but not limited to the cost of verifying the excess contribution.  In no event shall a credit or refund of contributions be taken or allowed for any period during which coverage has been provided by the United Welfare Fund - Welfare Division to an individual based on the employer's contributions, regardless of whether the United Welfare fund – Welfare Division actually paid benefits or premiums on behalf of that individual.

      D.      Employers have the sole responsibility and obligation to discover and determine the amount of mistaken contributions.  The request of an employer for refund of mistaken contributions must be in writing and shall not be effective until it is received by the Welfare Fund.  The employer must provide copies of all documentation on which the employer relies to substantiate its request or which may be required by the United Welfare Fund to verify the exact amount of the mistaken contributions.  The failure and or refusal of the employer to promptly

and fully comply with any or all of the provisions of this Policy may result in the denial of the request for the refund of mistaken contributions.

E.      The term "refund" shall include the offset of previously submitted mistaken contributions against currently due contributions ("credits"). As such, upon approval of the Trustees, an employer may be permitted to credit mistaken contributions, less the United Welfare Fund's set-off described above, against current contributions only to the same extent and under the terms and conditions as such employer may be entitled to a refund under this Policy. Any employer who attempts to recoup any mistaken contribution through a procedure other than the one described in this Policy (for instance, by the employer unilaterally taking a credit) shall result in the automatic forfeiture of the refund and the treatment of any credit taken by the employer as a delinquent contribution.

## **VII**

## **REPORTS AND RECORDS**

A.      <u>Reports: Fund Administrator</u>.  The Fund Administrator shall prepare a delinquency report to be presented periodically at Trustees' meeting. The Fund Administrator or staff member shall also present periodic reports to the Trustees concerning the progress of the United Welfare Fund's audit program.

B.      <u>Reports: Delinquency Litigation Counsel</u>.  Approximately every three months, Delinquency Litigation Counsel shall prepare a Status Report for submission at a Trustees meeting.  The Status Report shall include a list of the employers referred to Delinquency Litigation Counsel for the initiation of suit or arbitration, the amount of the delinquency for each such employer, and a summary of the current status of the collection efforts or litigation.

C.    <u>Reports: Auditors</u>.  The auditors for the United Welfare Fund shall report to the Fund Administrator monthly concerning the number of employers audited (or sought to be audited) and the results and cost of each audit.

D.    <u>Records</u>.  The United Welfare Fund Administrator shall maintain a file of: (1) currently effective collective bargaining agreements and other agreements detailing the basis upon which employers are obligated to make contributions to the United Welfare Fund; and (2) records concerning reports and payments received from employers and related correspondence to and from employers.

**VII.**

**EFFECTIVE DATE**

A.    These guidelines shall be effective November 1, 2016, and shall remain in effect until amended or replaced at the sole discretion of the Trustees.